FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAY 31 PM 4: 17
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| GEORGENE ALWANA SILLS SHAH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of Social Security Administration, ) <br> ) <br> Defendant. ) | CV 111-077 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Georgene Alwana Sills Shah ("Plaintiff"), appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I. **BACKGROUND**

Claimant applied for DIB on May 28, 2008, alleging a disability onset date of January 1, 2008. Tr. ("R."), pp. 123-24, 127. The Social Security Administration denied Claimant's application initially, R. 76, 78-80, and on reconsideration, R. 77, 83-86. Claimant requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on April 8, 2010. R. 35-74. At the hearing, the ALJ heard testimony from

Plaintiff, who was represented by counsel, as well as a Vocational Expert ("VE"). See id. On May 27, 2010, the ALJ issued an unfavorable decision. R. 16-30.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 1, 2008 (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: bilateral facet arthropathy at L4-5 and L5-S1; eczema on palms of hands; and major depressive disorder, recurrent vs. dysthymic disorder (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, although claimant has moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence, or pace (20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform light work[1] except the claimant can only occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. Claimant should avoid concentrated exposure to water, chemicals, dust, fumes, smoke, etc. Claimant would have to wear gloves for a day or two, every three or four months, but fine and gross manipulations are preserved. She additionally had limited but satisfactory ability to interact with others and adapt to workplace changes. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

---

[1] "Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

> 5. The claimant has acquired the following work skill from her past relevant work: clerical record keeping (20 C.F.R. § 404.1568). Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there were jobs existing in significant numbers in the national economy that claimant could have performed, including service dispatcher, personnel clerk, and maintenance clerk (20 C.F.R. §§ 404.1569, 404.1569(a) & 404.1568(d)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through May 27, 2010 (20 C.F.R. § 404.1520(g)).

R. 21-30.

When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ failed to account for Plaintiff's limitations in maintaining concentration, persistence, or pace in his RFC finding, leading to an erroneous determination that she can perform work that exists in the national economy, and (2) the ALJ improperly assessed Plaintiff's subjective complaints relating to the effect of her eczema on her ability to use her hands, leading to an erroneous RFC finding. (See doc. no. 11 (hereinafter "Pl.'s Br."); doc. no. 13 (hereinafter "Pl.'s Reply Br.").) The Commissioner maintains that the decision to deny Plaintiff's application for benefits was supported by substantial evidence and should be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence,

3

Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal

conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ's Assessment of Plaintiff's Limitations in Maintaining Concentration, Persistence, or Pace is Supported by Substantial Evidence

Plaintiff, citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011), argues that because the ALJ found that Plaintiff experienced moderate difficulties in maintaining concentration, persistence, or pace, he was required to account for such limitations in Plaintiff's mental functioning by including those limitations in the hypothetical question posed to the VE, or by otherwise addressing these limitations in the RFC determination. Pl.'s Br., pp. 17-18; Pl.'s Reply Br., pp. 5-7. Plaintiff argues that because the ALJ's RFC finding failed to reflect these limitations, his RFC determination and subsequent conclusion that Plaintiff can perform other work that exists in significant numbers in the national economy are therefore not supported by substantial evidence. Pl.'s Br., pp. 17-18; Pl.'s Reply Br., pp. 5-7. Moreover, Plaintiff argues that the ALJ should have accounted for these limitations by limiting her to, at most, unskilled work, which would have led to a finding that she is disabled by application of Grid Rule 202.06. Pl.'s Br., p. 18. The Commissioner argues that the ALJ adequately accounted for Plaintiff's limitations in concentration, persistence, or pace, and his RFC finding was informed by the medical evidence of record. Comm'r's Br., pp. 10-11. The Court resolves the matter as follows.

'At step four of the sequential evaluation process, the ALJ determined that Plaintiff

was unable to perform her past relevant work but had the residual functional capacity to perform a range of light work, as set forth in detail herein at page 2. R. 24. Because Plaintiff could no longer perform her past relevant work, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment that Plaintiff could perform given her age, education, previous work experience, and residual functional capacity. In this regard, the ALJ properly consulted a VE in conjunction with the Grids. The record reflects that the ALJ asked the VE several hypothetical questions; the first two hypothetical questions included only physical limitations. R. 63-64. With regard to Plaintiff's limitations in mental functioning, the ALJ posed the following third and final hypothetical to the VE:

> A third hypothetical, the same as the first two, but add one further, a moderate limitation on the ability to interact with others and adapt to workplace changes and demand, moderate meaning limited, but at least minimally satisfactory, which would also, is intended to imply the best of what a situation where there is intensity of interaction, other or frequent and extensive changes versus a relatively routine (INAUDIBLE) (sic). Okay. Could the third hypothetical individual perform any of the previous work?

R. 66. In response, the VE stated that Plaintiff could perform the jobs of service dispatcher, personnel clerk, maintenance clerk, and school secretary, all at the sedentary level. R. 67.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F.

Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations, including that a claimant "often" has deficiencies in concentration, persistence or pace, is grounds for remanding case for further proceedings).

In addition, the Eleventh Circuit has recently addressed the issue of whether a hypothetical question posed to the VE must specifically account for moderate limitations in concentration, persistence, and pace[2] identified at either step two or step three of the five-step sequential evaluation process. See Winschel, 631 F.3d at 1180-81. The Court of Appeals found that because the ALJ had not explicitly accounted for such limitations in his hypothetical to the VE, remand was necessary. Id. at 1181. However, the Eleventh Circuit explained that the ALJ could also have sufficiently accounted for limitations in concentration, persistence, and pace by either: (1) implicitly accounting for those limitations in hypothetical questions posed to the VE, or (2) discussing medical evidence showing that the plaintiff can work in spite of those limitations. See id. at 1180-81; see also Richter v. Comm'r of Soc. Sec., 379 F. App'x 959, 960-61 (11th Cir. 2010) (*per curiam*) (same).

Here, although the ALJ accounted for Plaintiff's moderate limitation in social functioning in his third hypothetical question, he neither explicitly nor implicitly accounted for Plaintiff's moderate limitations in maintaining concentration, persistence, or pace. See R. 66. Thus, the Court must address whether the ALJ adequately pointed to medical evidence in his RFC determination to support his conclusion that Plaintiff can work in spite of those limitations, as the Commissioner asserts. Comm'r's Br., p. 11.

The ALJ noted that Plaintiff reported being "too detail oriented" and had memory

---

[2]Concentration, peristence, or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(3).

problems that required her to write everything down and take notes; he thus concluded that she experienced moderate difficulties in maintaining concentration, persistence, or pace. R. 23 (citing R. 187). The ALJ later addressed these limitations in his RFC determination by noting that treatment records dating from January through March of 2010 from Serenity Behavioral Health Systems showed that Plaintiff "consistently presented as alert and fully oriented with fair insight and judgment, organized thoughts, and memory grossly intact." R. 27 (citing R. 386, 388-90). He further noted, "During a June 13, 2008 face-to-face interview with [Plaintiff] conducted by the Social Security Administration, the interviewer did not observe or perceive" that Plaintiff had any difficulties with concentrating. Id. (citing R. 154).

Plaintiff argues that the ALJ's RFC assessment that she retains the ability to perform semiskilled work is erroneous because it "is contrary to a multitude of cases cited by the Eleventh Circuit in both Winschel and Richter wherein [moderate limitations in concentration persistence, or pace] restricted claimants to *at most* unskilled work." Pl.'s Br., p. 18. Plaintiff does not refer specifically to which cases the Eleventh Circuit cited in Winschel or Richter, however. Further, Plaintiff concedes that Winschel does not create a "hard and fast rule" that an ALJ may account for a moderate limitation in concentration, persistence, or pace simply by limiting a claimant to simple or unskilled work. Pl.'s Reply Br., pp. 5-6. However, Plaintiff argues that a finding that she suffers moderate limitation in maintaining concentration, persistence, or pace requires a finding that she is capable of no more than unskilled work. Id.

The Court does not agree with Plaintiff's interpretation of Winschel. There is no dispute that where a claimant is found to suffer moderate limitations in maintaining concentration, persistence, or pace, an ALJ must do more than simply limit the claimant to

8

simple or unskilled work to properly account for those limitations. Winschel, 631 F.3d at 1180 (citations omitted). Yet it does not follow that *any* time a claimant is found to suffer moderate limitations in maintaining concentration, persistence, or pace, the ALJ will be *precluded* from finding that the claimant is capable of anything more than simple or unskilled work. Indeed, none of the cases cited in either Winschel or Richter stand for such a proposition, and the Court declines to adopt such an interpretation here. See, e.g., Simila v. Astrue, 573 F.3d 503, 521 (7th Cir. 2009) ("We have held that claimants who 'often experience[ ] deficiencies of concentration, persistence, or pace' are capable of performing semiskilled work." (citing Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003))).

Moreover, as the Commissioner correctly asserts, the ALJ pointed to medical evidence in the record to support his conclusion that Plaintiff's ability to work was unaffected by her alleged memory problems, being too detail-oriented, and having to write everything down. Comm'r's Br., p. 11. As noted above, the ALJ observed that Plaintiff's memory was observed to be grossly intact and that she was noted to have no difficulty concentrating. R. 27 (citing R. 154, 386, 388-90).

Plaintiff argues that treatment records from Serenity Behavioral Health Systems also indicate that she was nervous, tearful, anxious, irritable, and depressed, Pl.'s Reply Br., p. 6, yet she provides no explanation for how this would impact her ability to sustain focused attention and concentration to timely and appropriately complete tasks. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(3). Nor does Plaintiff otherwise point to evidence showing that she is unable to perform semiskilled work, as found by the ALJ. Thus, although Plaintiff is clearly dissatisfied with the ALJ's conclusion that she had the RFC for semiskilled work despite her limitations in maintaining concentration, persistence, or pace,

the ALJ cited to relevant evidence that is adequate to support his conclusion. Martin, 894 F.2d at 1529. Accordingly, Plaintiff is not entitled to the relief sought on this issue.

### B. The ALJ Failed to Properly Assess Plaintiff's Subjective Complaints

Additionally, Plaintiff argues that the ALJ improperly assessed her subjective complaints relating to the severe eczema on her hands. Pl's Br., pp. 12-17. Specifically, Plaintiff argues that this error led to the improper conclusion that her fine and gross manipulation was preserved and that Plaintiff therefore had the transferrable skill of clerical record keeping. Id. at 16. Moreover, Plaintiff argues that because she was not found to have any other transferrable skills, a finding that she was unable to perform clerical record keeping would require a finding that she is disabled pursuant to the Medical Vocational Guideline ("Grid") Rule 202.06. Id. at 17. By contrast, the Commissioner argues that the ALJ's determination that Plaintiff's subjective complaints regarding her eczema were not fully credible is supported by substantial evidence in the record. Comm'r's Br., pp. 5-10.

The Eleventh Circuit has established a three-part standard for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[3] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (*per curiam*).

In this case, the ALJ found that Plaintiff had the following severe impairments: bilateral facet arthropathy at L4-5 and L5-S1; eczema on her hands; and major depressive disorder, recurrent vs. dysthymic disorder. R. 21. Moreover, the ALJ noted Plaintiff's testimony that she was unable to work due to her eczema, among other things. R. 25, 45. He further noted Plaintiff's allegations "that her hands are always inflamed because of eczema, but, at times, they get infected and then they crack, bleed, ooze, and are very painful." R. 25, 46, 58. Moreover, he noted that Plaintiff "alleged that she cannot use latex gloves because they cause her hands to sweat and irritate her hands more, and she cannot function properly wearing cotton or fabric gloves." R. 25, 47.

Ostensibly applying the standard from Holt, *supra*, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above [RFC] assessment." R. 26. The ALJ stated that "the medical record fails to prove claimant's hand eczema flares more often," R. 26, although he did not provide a basis for comparison (i.e., more often than what?). The ALJ further stated that Plaintiff's eczema "does not necessitate the use of gloves more than a day or two, every three or four months . . . ." Id. To support this finding, the ALJ noted that examinations of Plaintiff on August 27, 2008, and August 17, 2009 indicated that Plaintiff was not suffering from her eczema and did not have skin lesions. R. 26 (citing R. 307-09, 346). The ALJ further stated:

> Treatment records covering the period from February 11, 2009 through January 12, 2010, from Marshall A. Guill, M.D., claimant's treating dermatologist, show claimant alternately reporting that her eczema was doing well on her prescribed regimen, and then having a flare-up; however, the frequency of the documented flare-ups is not often.
>
> Additionally, claimant's testimony was far from convincing, as she initially refused to say how often her hand eczema flares to the extent she is required to wear gloves, but then said "always" in answer to her attorney's question and thereafter, when the undersigned repeated his question; yet, her activities of daily living clearly require use of her hands and fingers, especially to shower and dress each day, which she reported doing even if she did not plan to leave the house (per claimant's testimony).

R. 26 (citing R. 47, 53, 57-59, 368-78).

The Court finds that, although the ALJ attempted to address Plaintiff's subjective allegations, he did not articulate adequate reasons for discrediting those allegations. Specifically, the evidence cited by the ALJ in support of his credibility determination – (1) Plaintiff's testimony and demeanor, (2) the medical evidence of record, and (3) Plaintiff's activities of daily living – do not support his conclusion. The Court addresses each in turn.

12

### 1. Consideration of Plaintiff's Testimony and Demeanor

First, the ALJ's characterization of Plaintiff's testimony at the video hearing is inaccurate: while the ALJ stated that Plaintiff "initially refused to say how often her hand eczema flares to the extent she is required to wear gloves" yet later responded to questions by her attorney and the ALJ that her eczema always requires the use of gloves, R. 26, the hearing transcript reflects that no such series of exchanges occurred; indeed, this question was never asked.

Rather, the only portion of the hearing in which Plaintiff was asked about the use of gloves was when her attorney followed up on Plaintiff's statement that she, at times, forced herself to use her hands even if they were infected from an eczema flare-up:

> ATTORNEY: Could you use some type of gloves or some type of latex, nitrile gloves on your hands to perform the jobs that you did, you know, where you -- in the jobs that you had?
> PLAINTIFF: Yes, I've attempted to use rubber gloves or latex gloves. My hands tend to sweat and it gets moist and it just irritates the skin even more. I've tried working with cotton gloves or fabric gloves and it's, it's, it's very difficult. You really can't function to any type of level that's acceptable for employers. They -- it's not an acceptable practice. . . .

R. 47. Thus, no one asked Plaintiff how frequently her eczema flares to the extent that she is required to wear gloves. Even in the exchange noted above, Plaintiff never asserted that she always needed to wear gloves.

The Court notes that Plaintiff's attorney also asked Plaintiff the more general question of how often she has eczema attacks, to which the Plaintiff replied, "I always have it. It's just a matter of whether it's severe at one time or just moderate." R. 46. The ALJ also asked Plaintiff how often her hands were inflamed from her eczema, to which she responded: "Your Honor, they're always [i]nflamed. There's always -- it may dry up today

13

and it will burst tomorrow." R. 57-58. In addition, when the ALJ later asked Plaintiff how often she was unable to use her hands at all, she replied, "Frequently. Frequently." R. 59. Yet in none of these exchanges did Plaintiff assert that she was always required to wear gloves or even that her eczema was always severe. While the Commissioner correctly asserts that the ALJ's assessment of Plaintiff's testimony is entitled to deference because the ALJ is able to observe her demeanor at the hearing and is therefore "in a better position to determine [her] veracity," Comm'r's Br., p. 9 (citing Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988)), this does not entitle the ALJ to mischaracterize that testimony in his assessment of Plaintiff's credibility. In short, because the Court finds no support for the ALJ's characterization of Plaintiff's hearing testimony regarding her use of gloves for her eczema condition, it therefore does not provide substantial evidence to support his credibility determination.

### 2. Consideration of the Medical Evidence

Second, as Plaintiff persuasively argues, Pl.'s Br., pp. 12-14, the medical evidence of record indicates that Plaintiff's eczema flare-ups were more frequent, and of much longer duration, than the ALJ provided for. Although the ALJ indicated that "the frequency of the documented flare-ups is not often" and that he found her flare-ups would not necessitate the use of gloves more than every three to four months, R. 26, Dr. Guill's treatment records reflect that Plaintiff suffered severe flare-ups in her eczema in February, March, April, May, August, September, and November of 2009, as well as a flare-up in February of 2010. R. 368-78. In other words, over the course of Plaintiff's treatment history with Dr. Guill, she was treated for a severe eczema flare-up roughly every other month – two to three times as often as the ALJ provided for.

Moreover, the ALJ does not explain how he reached the conclusion that Plaintiff's eczema flare-ups would only require the use of gloves for one or two days at a time. By contrast, Plaintiff points to the treatment notes of Dr. Guill, who consistently prescribed a potent medication, clobetesol,[4] for two-week periods to treat Plaintiff's flare-ups. R. 368, 371, 373, 376, 378. Indeed, the Court observes that Plaintiff suffered a severe flare-up in her eczema on February 4, 2009, for which she was prescribed a two-week course of Temovate, the brand name for clobetasol,[5] as well as several other medications. R. 378. Notes from a follow-up phone call one week later indicate that while Plaintiff's eczema was "much better" after using the medications, "her dictation [was] not back yet," indicating that the use of her hands was still limited at least seven days after her eczema first flared up. See R. 377. The ALJ offers no explanation for how wearing gloves for one or two days during a flare-up would resolve such limitations. Further, the ALJ's reliance on two dates in which Plaintiff was *not* observed to have indications of eczema – once on August 27, 2008, and again on August 17, 2009, R. 307-09, 346 – could hardly be said to negate the numerous flare-ups noted by Dr. Guill. Indeed, the ALJ's reliance on the August 27, 2008 treatment notes is especially troubling, as Plaintiff's right hand was noted to be "cracked, tender," and hyper-pigmented on that date. R. 312.

The Commissioner argues, however, that Irving D. Wolfe, M.D., who was Plaintiff's treating dermatologist before she moved to a new state and began seeing Dr. Guill, provided

---

[4]Clobetasol is used to treat a variety of skin conditions, including eczema, and "is a very strong (super-high-potency) corticosteroid." http://www.webmd.com/drugs (search "Clobetasol"; then follow "CLOBETASOL - TOPICAL" hyperlink) (last visited May 24, 2012.)

[5]See www.webmd.com/drugs (search "Temovate") (last visited May 24, 2012).

15

an opinion dated December 10, 2007, in which he stated that Plaintiff's eczema was well controlled and that he found no reason why it would interfere with her ability to work. R. 304. Yet the Commissioner concedes that the ALJ did not rely on Dr. Wolfe's statement in his decision. Comm'r's Br., p. 7. To rely on such evidence at this juncture would amount to a *de novo* determination regarding the credibility of Plaintiff's testimony regarding Plaintiff's symptoms, which exceeds the scope of the Court's review.[6] See Ryan, 762 F.2d at 942.

### 3. Consideration of Plaintiff's Activities of Daily Living

Third, the ALJ's reliance on Plaintiff's activities of daily living to support his credibility determination is similarly unpersuasive. Although the ALJ asserted that Plaintiff's "activities of daily living clearly require use of her hands and fingers, especially to shower and dress each day," the ALJ does not explain how these activities are inconsistent with Plaintiff's subjective complaints. While it is true that the ALJ may consider Plaintiff's daily activities in assessing the credibility of her complaints of disabling pain, Comm'r's Br., p. 9 (citing Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984) (*per curiam*)), the Court does not see how activities such as daily bathing or dressing serve to undermine Plaintiff's claim that she suffers from painful flare-ups in her eczema that interfere with her ability to work. Indeed, "participation in everyday activities of short duration, such as housework . . . , [does not] disqualif[y] a claimant from disability." Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997); see also Holman v. Barnhart, 313 F. Supp. 2d 1265, 1270

---

[6]Moreover, although Dr. Wolfe's December 2007 opinion is dated just a few weeks before Plaintiff's alleged onset of disability, Plaintiff points out that Dr. Wolfe stated in his opinion that he had last seen Plaintiff in August of 2007, which was well before her alleged onset date. Pl.'s Reply Br., p. 2 (citing R. 304).

16

(N.D. Ala. 2004) ("[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled." (quoting Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir. 1974))). In sum, the ALJ's credibility determination is not supported by substantial evidence, and the Commissioner's decision should thus be remanded.[7]

Finally, the Court notes Plaintiff's request that the Court reverse the Commissioner's decision and award her benefits. Pl.'s Br., p. 19. While remand is appropriate, the Court will not recommend that the Commissioner be directed to find Plaintiff disabled. Though the Court has concluded that the ALJ's consideration of the evidence and credibility determinations were deficient in multiple respects, it is not for the Court to make such determinations on its own, see Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*), which it would have to do in order to remand with instructions to enter a decision in Plaintiff's favor.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be

---

[7]The Court also notes the Commissioner's argument that Plaintiff was "prone to exaggeration," as found by the ALJ. Comm'r's Br., pp. 9-10 (citing R. 27). Specifically, the ALJ stated that Plaintiff is prone to exaggeration because she indicated that use of a lamp treatment for her eczema may result in skin cancer and that another occurrence of pneumonia would be fatal. R. 27 (citing R. 157). This characterization is misleading, however, as Plaintiff asserted that *her doctors* – as opposed to Plaintiff herself – had reached these conclusions: Plaintiff testified that Dr. Wolfe was at an impasse because previous prescriptions for her eczema had failed to control that condition, yet beginning lamp treatment would put Plaintiff at greater risk of developing skin cancer, R. 46, 157; Plaintiff also indicated that it was her primary physician who asserted that another bout of pneumonia – from which she had previously suffered in January of 2007 – would be fatal. R. 157. Even if the Court were to assume *arguendo* that Plaintiff exaggerated the consequences of lamp treatment or another bout of pneumonia, this alone is insufficient evidence to support the ALJ's credibility determination in light of the numerous other errors noted *supra*.

**REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

In addition, the Court notes that Plaintiff requests the inclusion of certain language in the order of remand relating to Plaintiff's possible future application for 42 U.S.C. § 406(b). See Pl.'s Br., p. 19. However, rather than include the language suggested by Plaintiff, the Court finds it appropriate to follow its usual practice of granting 30 days from the date of the closeout letter in which to apply for § 406(b) fees in the event that benefits are awarded on remand. See Jones v. Astrue, CV 310-038 (S.D. Ga. June 17, 2011). Therefore, should the District Court adopt this Court's recommendation as its opinion, Plaintiff should be given an extension of time of 30 days from the date of the Social Security closeout letter to file for fees under § 406(b).

SO REPORTED and RECOMMENDED this 31st day of May, 2012, at Augusta, Georgia.

                                                      W. LEON BARFIELD
                                                      UNITED STATES MAGISTRATE JUDGE